LARRY G. SMITH, Judge.
Southern Cucumber Co., Inc. (Southern), appeals a final Department of Agriculture order requiring an accounting to appellees Henderson and Runner, d/b/a H & R Farms, and Richardson (hereafter “growers”), for all cucumbers delivered by growers to Southern at Southern’s packing house in Wauchula, Florida, during the fall growing season of 1980. We affirm the order for an accounting, with modifications.
The argument on appeal focuses upon whether Southern[1] in its course of business with the growers during the season in question was a purchaser,[2] or whether it acted as an agent or handler[3] in receiving, processing, packing and marketing the cucumbers produced by the growers and delivered to Southern. Although the hearing officer in his recommended order found that *773 Southern was acting as an agent or handler with respect to these particular growers, rather than as a purchaser, a review of the record of the hearing below points more to the existence of a “hybrid” relationship between the parties. That is to say, certain aspects of the parties’ course of dealings resembled a purchase by Southern for its own account, but as to other aspects of their course of dealings, Southern appeared to act as an agent or “handler” for the growers’ products.[4]
We will first dispose of Southern’s contention that it was a “cash buyer” entitling it to exemption, under Section 604.16, Florida Statutes (1979),[5] from the accounting requirements of Section 604.23, Florida Statutes (1979).[6] We find that the hearing officer correctly resolved this contention against Southern, for as the record amply demonstrates (as to these growers), at no time did Southern pay “cash,” in “United States currency,” which it must have done in order to be entitled to the statutory exemption.[7]
Turning next to the issue which we consider to be the crux of this case, we find *774 ample statutory authority for the accounting ordered by the hearing officer, notwithstanding our inability to find evidentiary support for certain factual findings upon which the hearing officer based his conclusion that Southern acted as an agent or handler of the growers’ products.[8] More particularly, Section 604.20 requires, as a prerequisite to the issuance of a license to act as a dealer for agriculture products, the posting of a bond conditioned upon the accounting for and payment to producers for agricultural products “handled or purchased” by the dealer. Thus, the accounting and payment provisions of the bond apply to a dealer, regardless of whether the dealer acts as an agent or handler, or whether the products are “purchased” by the dealer. Under Section 604.21, Florida Statutes (1979), the Department is given the authority to hear complaints of producers,[9] conduct investigations and hearings, and to make findings and enter an order “adjudicating the amount of indebtedness due to be paid by the dealer to the complainant.” Upon failure of a dealer to comply with the order, the Department is directed to call upon the surety on the bond to make payment. Section 604.23, Florida Statutes (1979), supplements the bond requirement and the investigative and adjudicative authority of the Department, by authorizing the Department to investigate a dealer’s failure to make proper and true accounts and settlements at prompt and regular intervals, or failure to make payment for goods received, and other infractions. This section further authorizes the Department or its agents to examine a licensee’s books and records.
Under the pertinent statutory provisions, as above indicated, all that is necessary in order to trigger the Department’s investigative and adjudicative powers, is the existence of a complaint by a producer that a licensed dealer has received agricultural products but has failed to make proper and true accounts and settlements at prompt and regular intervals, or failed to make payment for goods received. We find that the hearing officer correctly interpreted *775 these statutory provisions and made findings of fact and conclusions to justify the order for an accounting. Therefore, although the parties and the hearing officer appeared to be of a contrary view, we find that it was unnecessary for the hearing officer to also determine, at this stage of the proceeding, whether Southern was a purchaser, or was acting as an agent or handler. We observe further that although the parties on this appeal have devoted a great deal of discussion to matters of agency law, we will forego any exposition on that subject because the record before us is simply inadequate to determine the facts to which some facet of that law may or may not be applied, and such a determination is unnecessary to our ruling on the validity of the order appealed.[10] It is obvious, also, that this controversy is further complicated by the fact that there have been extensive financial dealings between Southern and these growers, owing to Southern’s advancement of funds for various farming and harvesting expenses, all of which were recouped by Southern from sums otherwise payable to the growers for cucumbers delivered.
We therefore affirm the Department’s order for an accounting with exception of that portion requiring Southern to furnish to the growers the names of the parties to whom these growers’ cucumbers were ultimately sold and the price obtained upon sale, since there is an absence of an eviden-tiary basis for a finding that such information is available. The Department cannot order a party to do the impossible. We therefore modify the order to provide this particular information “if available,” and the Department is authorized to conduct such further investigation or proceedings as may be necessary to make this determination.
The order appealed from is AFFIRMED, as modified, and the cause is remanded for further proceedings.
JOANOS and NIMMONS, JJ., concur.

. Southern is a licensed “Dealer in agricultural products” under the provisions of Section 604.-15, Florida Statutes (1979).

. The terms “purchaser” or “purchased,” are not defined in the statutes. However testimony at the hearing below established certain generally understood distinctions between a dealer who purchases produce on its own account, and a dealer who acts as an agent or handler for a grower. Generally, as stated in the findings of the hearing officer’s recommended order, a dealer who purchases the cucumbers for a set price, either at the field or upon arrival at the packing house, is a purchaser, in which event payment is made to the producer upon delivery of the produce, and title passes immediately to the purchaser. On the other hand, an agent or “handler” is one who accepts produce from a grower, packs it, sells it, sends it to the ultimate buyer, receives the purchase price back, subtracts his profit from that, and returns the balance to the growers.

. Id., see footnote 2.

. There was no written contract, only an oral understanding, that cucumbers delivered by the growers to Southern would be machine washed and waxed by Southern, then packed in boxes ready for shipment, for which Southern would be entitled to a “pack-out” charge of a certain amount per bushel, to be deducted from the purchase price ultimately paid to the growers by Southern. The purchase price per bushel, according to the understanding, was to be set by Southern three times weekly, based upon the price being received by it for cucumbers sold on the date or dates cucumbers were delivered by the growers. Southern insisted that all cucumbers became its own property as soon as each load was processed through the machine, and that the price payable for cucumbers delivered on any given day was in no way dependent upon whether, or for what amount, it ultimately sold the particular lot of cucumbers. Southern’s evidence established, consistent with what the growers said was the agreed arrangement, that the price it paid to the growers was based upon the three-times-per week price set by Southern, which was the same price it paid to other producers for cucumbers of the same grade and quality delivered on the same day. There was no direct evidence that the growers were charged with any loss by reason of spoilage or Southern’s inability to sell any particular lot of cucumbers, and Southern established without contradiction that as cucumbers emerged from its processing machine they were commingled with cucumbers obtained from other producers. In addition, the evidence clearly established, as found by the hearing officer, that Wauchula is traditionally a “cash market” for cucumbers, as opposed to an “agent or handlers” market. These facts negate the finding that Southern was an agent or “handler.”
On the other hand, the growers established that although they would receive “pack-out” slips showing the quantity of each load deliverd, they did not receive pack-out slips showing the price payable for each load until some times as much as a month or more after delivery to Southern. The growers complained also that they customarily had to wait for varying periods of time for payment, sometimes as long as thirty days. The testimony of Southern’s witnesses tended to refute the growers’ claims that they were unable to receive payment immediately upon each delivery, but it is clear from the evidence that the general course of dealing between the parties was as stated by the growers. There was further testimony from the growers that on occasion they were told that they could not receive payment until Southern had collected from its buyers, and in response to questions concerning the price to be received, the growers insisted they were informed by Southern that “adjustments” would be made, leading the growers (and apparently the hearing officer) to infer that the price the growers ultimately received was dependent upon the price received by Southern for the particular lot of cucumbers delivered by the growers. These facts, among others, indicate that Southern occupied the agent or “handler” status, rather than the status of purchaser for its own account.

. Section 604.16 provides, in part, that the provisions of Section 604.15-604.30 “shall not apply to: ... (2) all persons who buy for cash and pay at the time of purchase with United States currency.”

. Section 604.23, Florida Statutes (1979), confers upon the Department of Agriculture the power to investigate complaints etc., and for such purposes to examine the books and records of a licensee. This provision must be read in pari materia with Sections 604.20 (bond requirement), and 604.21 (provision for filing of complaints, hearing and adjudication by the Department, and entry of orders requiring payment by the licensee to a producer).

. Neither does the record disclose a practice of payment “at the time of purchase” per the language of Section 604.16, as to these particular growers.

. Despite some marginal contrary inferences, based primarily upon the growers’ speculative assumptions, we are of the opinion that the hearing officer erred in finding that title to the cucumbers “did not pass” to Southern upon delivery to Southern’s loading dock. It is undisputed that these growers’ cucumbers were not segregated by lots, no lot numbers were assigned nor given to the growers, and upon completing their passage through the processing machine the cucumbers were immediately commingled with those received from other producers. Furthermore, the oral understanding as related both by the growers and witnesses for Southern was that the price to be paid to the growers was determined by the price set by Southern three times every week, not by the price ultimately received by Southern when it sold the cucumbers. Although one may extract from the growers’ testimony facts indicating that Southern may not have always honored this price-setting agreement, this in itself would not justify denial of Southern’s status as a purchaser.

. The complaints here were made on a Department of Agriculture form L & B 25 (Request For Accounting), the printed portion of which contained a blank space for the name of “Producer’s Agent,” and contained the allegation that the growers’ products were turned over to “the named producer’s agent to be handled for the account of the producer.” The form further contained the allegation that the producer’s agent was to dispose of the agricultural products “and remit the net proceeds” to the producer, after making allowable and authorized deductions. Thus, it is evident that the printed form was designed for use by producers seeking an accounting from an agent or “handler,” rather than a “purchaser.” See footnote 2, supra. However, the form also contained space for the complainant to state the facts of the particular transaction with respect to which an accounting was requested, and in this portion of the complaint form each of the growers complained that they had been unable to receive a full accounting for their produce during the fall season of 1980. Each complaint set forth factual particulars of the grower’s dealings with Southern during that season, substantially along the lines as covered in their testimony. Neither grower specified a particular amount due and owing to them. At the hearing they testified that this was the major problem, that is, that they were unable to determine the amounts they should have been paid by Southern. Since the complaints were clearly sufficient to establish the right to an accounting under the pertinent statutes (see footnote 5 and 6, supra), the form of the complaints is of little consequence in this case. See, Steinmetz v. Conner, 190 So.2d 38 (Fla. 1st DCA 1966).

. The growers were not represented by counsel in the proceedings below. Their testimony, although sufficient for purposes of establishing the need for an accounting, was confusing, inconclusive, and at times self-contradictory. The gist of their complaint was that they were dissatisfied with the return they received for their cucumbers, but did not know what additional payments, if any, they were entitled to receive. Whether some aspect of agency law may be applicable to a determination of liability under the facts developed in the process of completing the accounting between the parties remains to be seen, and we caution that nothing in our opinion should be construed as an adjudication of monetary liability for or against Southern for any reason.